FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

00 JUN -6 PM 3: 00

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| PRINTMASTERS, INC., | ) | |
| Plaintiff, | ) | |
| vs. | ) | CV 00-PT-0002-M |
| AVNE SYSTEMS, LTD., | ) | |
| Defendant. | ) | |

ENTERED
JUN 6 2000

## MEMORANDUM OPINION

This cause comes to be heard on defendant's, Avne Systems, Ltd. ("Avne" or "defendant"), motion to dismiss, or in the alternative, motion for summary judgment, based upon lack of personal jurisdiction, filed April 28, 2000.

## BACKGROUND

This case arises out of a contract dispute. Avne is a New York corporation with its place of business located in New York. Avne does not have an office in Alabama, does not own any real property in Alabama, does not employ any persons who reside in Alabama, and is not licensed to conduct business in Alabama. See First, Second, and Third Affidavits of Daniel Solomon. Printmasters, Inc. ("Printmasters" or "plaintiff") is an Alabama corporation, with a production facility located in Albertville, Alabama.

The parties disagree as to who initiated contact with the other. Printmasters contends that Avne initiated contact with it, upon the recommendation of Mr. Mike Benton. See Rich Rice

1

Affidavit. Avne contends that Printmasters made the first contact with it, affirmatively soliciting its business. See Chad Miller Affidavit. The parties do agree that contact was made between the parties in the fall of 1998. Through multiple phone conversations between Rich Rice, a sales representative for Printmasters, and Chad Miller, Avne's Vice President of Sales at the time, the parties discussed the product, plastic bags used for newspaper delivery, and pricing. Printmasters submitted a price list for it to produce plastic bags to be shipped to the State of Texas. The plastic bags were for the following newspapers: the Atlanta Journal Constitution, the Denver Post, the Tampa Tribune, the Ft. Lauderdale Sun, the Orlando Sentinel, Rocky Mountain News, the Houston Chronicle, the St. Petersburg Times, the Chicago Sun Times, the Ft. Worth Telegram, and the Nashville Banner. Def. Exh. 3, attached to the Third Affidavit of Daniel Solomon.

On or about November 2, 1998, Chad Miller visited Printmasters's Alabama facility to observe whether Printmasters was a viable business entity, capable of fulfilling Avne's needs. Chad Miller toured the facility, and spoke with the owners of Printmasters, Dennis Hicks and Gus King. Affidavit of Rich Rice. The parties disagree as to the import of this visit, i.e. as to whether significant or insignificant negotiations took place. In either case, it is clear that at least some negotiations occurred. Chad Miller's visit was the only visit by Avne to Alabama in this case.

After the visit, through numerous phone calls, faxes, and e-mails, Avne agreed to purchase and Printmasters agreed to produce $231,174.37 worth of the small plastic bags to be used for newspaper delivery. Avne contends that it sent one purchase order to Printmasters, dated January 6, 1999, which is the only contract between the parties. Third Affidavit of Daniel

2

Solomon; Affidavit of Chad Miller.[1] Avne contends that the Purchase Order was a standard form used by Avne. Def. Exh. 9 attached to Affidavit of Charles J. Martin. Printmasters asserts that, until this litigation, it never saw Avne's Purchase Order, and that it sent Avne seventeen separate invoices for individual orders, each ranging in price from a little over a thousand dollars to over twenty-six thousand dollars. Affidavit of Glenda Swanson. Printmasters also contends that the deal between the parties was essentially oral, with the various orders specifically negotiated and agreed to.[2]

    The correspondences submitted by the parties to the court include the following:

1. October 28, 1998 fax from Printmasters to Avne re: price quote;
2. October 29, 1998 fax from Printmasters to Avne re: price quote;
3. October 30, 1998 letter from Avne to Printmasters re: production schedule and numbers;
4. November 11, 1998 fax from Avne to Printmasters re: credit;
5. November 13, 1998 fax from Printmasters to Avne re: single price;
6. November 24, 1998 memo from Avne to Printmasters re: specific instructions on order;
7. [Def. Exh. 7 is not included in Avne's submissions];
8. December 17, 1998 fax from Avne to Printmasters re: packing of bags;
9. January 6, 1999 purchase order from Avne to Printmasters;
10. January 11, 1999 fax from Avne to Printmasters re: changes in order and over- and under-production of bags;
11. January 15, 1999 fax from Avne to Printmasters re: over- and under-production of bags (Vantec receiving report);
12. January 18, 1999 fax from Avne to Printmasters re: over- and under-production of bags (Vantec receiving report);

---

[1] It is unclear if the date on the Purchase Order corresponds to the date it was issued as a note is made on the order stating: "Please notify us immediately if this order cannot by shipped complete on or before: 01/05/99." As the date of shipment precedes the date of the order, it appears that that date may not be representative of the date the order was actually sent.

[2] In the course of this Opinion, the court will refer to the order in the singular. By this, the court is not making any statement or decision as to whether there was one order or many. Rather, it is only for convenience.

> 13. January 22, 1999 fax from Avne to Printmasters re: over- and under-production of bags (Vantec receiving report);
> 14. Two faxes from Printmasters to Avne, dates unclear;
> 15. Undated letter from Printmasters to Avne re: cardboard headers;
> 16. January 27, 1999 fax from Avne to Printmasters re: over- and under-production of bags and shipping delays (Vantec receiving report);
> 17. February 11, 1999 fax from Printmasters to Avne apologizing for delays;
> 18. March 3, 1999 letter from Avne to Printmasters re: partial payment for $109,499.08.

The parties agree that the production and shipment of the plastic bags did not run smoothly. There were numerous shipping delays and under-production of bags. Based on these factors, Avne paid Printmasters what it thought was fair, $109,499.08, which was less than the total agreed upon price. Def. Exh. 13 attached to Affidavit of Charles J. Martin. Printmasters filed this action on July 9, 1999, in the Circuit Court of Marshall County, Alabama, seeking the balance allegedly due. Avne removed the action to this court on January 3, 2000.

## DISCUSSION

### A. Standard of Review

When a district court does not conduct an evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over the non-resident defendant. See Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990). A plaintiff establishes a prima facie case when she or he presents enough evidence to withstand a motion for directed verdict. See id. The district court must accept the facts as alleged in the complaint as true, but only to the extent they are uncontroverted by the defendant's affidavits. See id. Where factual conflict is present and the court does not conduct an evidentiary hearing, the court must construe all reasonable inferences in favor of the non-moving party. See id.. See also Francosteel Corp. v. M/V Charm, 19 F.3d 624, 626 (11th Cir. 1994); Ruiz de Molina v.

4

Merritt & Furman Ins. Agency, Inc., 207 F.3d 1351, 1356 (11th Cir. 2000). Whether a district court conducts an evidentiary hearing is discretionary. See Madara, 916 F.2d at 1514; Ruiz de Molina, 207 F.3d at 1356. In assessing the propriety of a motion to dismiss for lack of jurisdiction, a district court is not limited to inquiry into undisputed facts; the court may hear conflicting evidence and decide for itself factual issues that determine jurisdiction. See Colonial Pipeline Co. v. Collins, 921 F.2d 1237, 1243-44 (11th Cir. 1991) (dealing with subject matter jurisdiction). A plaintiff should generally have ample opportunity to present evidence bearing on the existence of jurisdiction. See id. In summary, if a material issue is contested and there is conflicting evidence, a court must either deny the motion to dismiss and postpone any further jurisdiction challenge until trial, or hold a preliminary evidentiary hearing. See Chalwest (Holdings) Ltd. v. Ellis, 924 F.2d 1011, 1014 (11th Cir. 1991).

### B. Personal Jurisdiction

Defendant contends that there can be no general jurisdiction over it as it has no regular contacts with the State of Alabama in any way. Defendant argues that there can be no specific jurisdiction over it as well, as its contacts with Avne so not sufficient for it to be haled into court here. Plaintiff argues that it has not had adequate time to complete discovery on the issue of whether there is general jurisdiction over Avne, but in any case, Avne's contacts with Printmasters and Alabama are sufficient to give this court specific jurisdiction over it. Both parties rely on numerous cases which will be discussed in turn.

As an initial matter, the court notes that there are two types of personal jurisdiction: general and specific. See, e.g., Madara, 916 F.2d at 1516 n.7. "Specific personal jurisdiction is founded on a party's contacts with the forum state that are related to the cause of action. General

5

personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation." Id. (citing Helicopteros Nacionales de Colombia N.A. v. Hall, 466 U.S. 408, 414 nn. 8 & 9 (1984); Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 857 n.41 (11th Cir. 1990); Morris v. SSE, Inc., 843 F.2d 489, 491 n.2 (11th Cir. 1988)). While plaintiff contends it has had insufficient time to explore Avne's potential general jurisdiction in this forum, its protestations echo hollow. Avne has made available relevant persons for deposition on the topic and Printmasters has declined the offer. Additionally, it appears from the record that general personal jurisdiction of Avne in Alabama is unlikely at best. Thus, the court will focus its attention on whether it has specific personal jurisdiction over Avne, the topic predominantly attended to in the parties' briefs.

Courts employ a two-part analysis when determining whether they have personal jurisdiction over a non-resident. See Madara, 916 F.2d at 1514. A court first determines whether jurisdiction is proper under the forum state's long arm statute. See id. If the first prong is met, the court next considers whether its exercise of jurisdiction will offend federal due process requirements. See Francosteel, 19 F.3d at 627. This second prong is itself a two part inquiry. See Madara, 916 F.2d at 1515-16. First, the court must decide whether the defendant has established "minimum contacts" with the forum state. See id. Second, the court must decide whether the exercise of personal jurisdiction over the defendant would offend "traditional notions of fair play and substantial justice." See id. (citing Williams Elec. Co. v. Honeywell, Inc., 854 F.2d 389, 392 (11th Cir. 1988) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1940)). If all these parts are met, the court may exercise jurisdiction over the defendant.

The first question for this court, then, is whether jurisdiction is proper under Alabama's

6

long arm statute. Alabama's long-arm statute provides, in pertinent part, that:

> [a] person has sufficient contacts with the state when that person ... otherwise having some minimum contact with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action ... so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States.

ALA. R. CIV. P. 4.2(a)(2)(I). As such, it is as broad as is permissible under the limits of federal due process. See Alabama Waterproofing Co., Inc. v. Hanby, 431 So.2d 141, 145 (Ala. 1983); Oliver v. Merritt Dredging Co., Inc., 979 F.2d 827, 830 (11th Cir. 1992); Butler v. Beer Across America, 83 F. Supp. 2d 1261, 1265-66 (N.D. Ala. 2000). Because the Alabama inquiry and federal inquiry as to personal jurisdiction are coextensive, this court need only consider whether the exercise of specific personal jurisdiction here will satisfy the federal requirements of due process. See Oliver, 979 F.2d at 830; Banton Industries, Inc. v. Diamatic Die & Tool Co., 801 F.2d 1283, 1284 (11th Cir. 1986); Butler, 83 F. Supp. 2d at 1266. The court next turns to the federal due process requirements.

**1. Minimum Contacts**

"Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have 'fair warning' that a particular activity may subject him [or her] to the jurisdiction of a foreign sovereign." Madara, 916 F.2d at 1516 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1977) (Stevens, J. concurring in judgment)). Fair warning has been accomplished if the defendant has "purposefully directed" his or her activities at the forum state, Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984), if the litigation results from alleged injuries that "arise out of or relate to" those activities, Burger

7

King, 471 U.S. at 472, and if the defendant's conduct and contacts with the forum state are such that he or she should reasonably anticipate being haled into court there, id. at 472. Contacts which are insufficient to provide fair warning are those which are random, fortuitous, or attenuated, or those caused by some third party. Burger King, 471 U.S. at 475; Keeton, 465 U.S. at 774; Helicopteros, 466 U.S. at 417. Jurisdiction is proper where the defendant has proximately created, through his or her own actions, a "substantial connection" with the forum state. Burger King, 471 U.S. at 475 (quoting McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957)). Jurisdiction is also proper when the defendant has purposely availed itself of the benefits and protections of the laws of the forum state. Hanson v. Denckla, 357 U.S. 235, 253 (1958); Ruiz de Molina, 207 F.3d at 1356. Generally, "with respect to interstate contractual obligations, [the Supreme Court has] emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other [s]tate for the consequences of their activities." Burger King, 471 U.S. at 473.

### 2. Fair Play and Substantial Justice

Once the first prong of due process is satisfied, the court next looks to whether its assertion of personal jurisdiction over the defendant would comport with "fair play and substantial justice." See Madara, 916 F.2d at 1517 (citing Burger King, 471 U.S. at 476 (quoting International Shoe, 326 U.S. at 320)). The factors utilized by courts in determining this are the burden on the defendant in defending the lawsuit in the subject forum, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective judicial relief, the interstate judicial system's interest in obtaining the most efficient resolution of

8

controversies, and the shared interest of the states in furthering their own state policies. See Madara, 916 F.2d at 1517 (citing Burger King, 471 U.S. at 177; and World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

### C. Application and Analysis

Whether or not minimum contacts have been met is a fact intensive inquiry for which there is no set formula. See Francosteel, 19 F.3d at 627-28. In this case, the relevant facts are as follows. The parties dispute who made initial contact with the other. There were numerous telephone conversations. Chad Miller, an Avne Vice President traveled to Alabaster, Alabama to view Printmasters' facility. While there, Mr. Miller spoke with the joint owners of Printmasters. Also while there, some negotiations occurred. The visit lasted for a few hours. After the visit, the parties mailed, faxed, phoned, and e-mailed each other frequently for the next few months concerning contract negotiations, production, and shipments. This was Avne's first and, so far, only dealing with Printmasters. The goods were to be shipped, not to Avne's business address in New York, but rather to Texas. A printing plate to be used was shipped from Indiana to Alabama. Based upon Avne's list of newspapers to which the plastic bags were to correspond, it appears, and Avne has not denied, that it does business in, at least, Georgia, Florida, Texas, Colorado, Tennessee, Indiana, and Illinois.

The court first notes that while the Supreme Court has held that "a defendant's one-time solicitation of business in the forum state is sufficient grounds for the exercise of personal jurisdiction over the defendant," Ex parte Phase III Construction, Inc., 723 So.2d 1263, 1267 (Ala. 1998) (citing McGee v. International Life Ins. Co., 355 U.S. 220 (1957)), this holding, without more in the way of additional factors, is usually reserved for cases involving insurance.

See, e.g., McGee, 355 U.S. 220 (due process not violated where California resident insured by Texas insurance company, although insurance company had no offices or agents in California and had never solicited or done any business in California except for the policy involved in this case; Texas company could be haled into California's jurisdiction); Ruiz de Molina, 207 F.3d 1351 (due process not violated where Michigan insurance brokers dealt with Florida insurance broker to provide Alabama resident boat owner with insurance, although Michigan brokers never had any direct contact with Ruiz de Molina in Alabama and all dealings were with Florida; Michigan brokers could be haled into Alabama's jurisdiction); Oliver, 979 F.2d 827 (insurance industry must anticipate that guaranty associations will be haled into numerous courts of differing jurisdictions).

    In Madara, the Eleventh Circuit Court of Appeals found that a performer did not have sufficient contacts with Florida to be haled into court there. The performer, Daryl Hall, gave a telephone interview from New York with a California based reporter. The interview was then printed in a magazine, over which Hall had no control, which was distributed in Florida. The plaintiff was not a resident of Florida, but brought suit there because the statute of limitations had not yet expired in that state and had elsewhere. The court recognized that Florida did not have general personal jurisdiction over Hall, and that Florida did not have specific personal jurisdiction over Hall based on this one interview. Hall did not make any "purposeful act, directed at the forum state." 916 F.2d at 1519 (citing Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 112 (1987)). The court further held that the burden on Hall to defend in Florida would be great, and that Florida had little interest in adjudicating the action. This case bears little factual similarity to Madara.

In Sea Lift, Inc. v. Refinadora Costarricense De Petroleo, S.A., 792 F.2d 989 (11th Cir. 1986), the Eleventh Circuit reversed the district court's holding that it had jurisdiction over a Costa Rican defendant. The plaintiff, Sea Lift, Inc., was a Florida corporation hired through the insurer of the defendant state-owned Costa Rican company to salvage a sunken barge located in Costa Rican waters. The defendant's insurer, Lloyd's of London, contacted London Salvage, a New York affiliate of Lloyd's, to solicit Sea Lift's services. A boiler-plate contract was signed by the defendant's representatives in Costa Rica, and signed by Sea Lift in Miami, Florida. The contract terms specifically provided that the law of England would govern. The court noted that "[t]he mere 'foot-fall' of the defendant's agents 'on the State's soil' does not in the relevant sense invoke the benefits and protections of the laws of the forum," citing Wisconsin Elec. Mfr. Co. v. Pennant Prods., Inc., 619 F.2d 676, 678 n.8 (7th Cir. 1980) (quoting Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 239 F.2d 502, 509 (4th Cir. 1956)), and that a contract between the two forums does not, by itself, amount to purposeful availment, citing Afram Export Corp. v. Metallurgiki Halyps, S.A., 772 F.2d 1358, 1362 (7th Cir. 1985) (citing Burger King, 105 S.Ct. 2174, 2185). The court concluded that due process would not allow for haling the Costa Rican company into Florida court because, although some Florida activities occurred, Sea Lift's duties were to be performed exclusively in Costa Rica and the contract provided that English law would govern.

In Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc., 786 F.2d 1055 (11th Cir. 1986), the Eleventh Circuit held that the defendant was not subject to specific personal jurisdiction in Missouri where the subject merchandise was manufactured in Missouri, the defendant's employees entered Missouri to return the goods, and the defendant placed a trade

11

acceptance with a Missouri bank for payment. The court noted that the defendant's physical entry into the state was jurisdictionally significant, but was insufficient to base jurisdiction as the defendant was simply returning unwanted goods. The court found the placement of the trade acceptance to be entirely insignificant. The bulk of the court's holding rested on the manufacture of goods in Missouri. The court noted that the contact was an isolated purchase, there had been no prior dealing between the parties, and there was no supervision or participation by the defendant in the production process. Based on these factors, the court found jurisdiction to be lacking. This case is helpful in this court's decision, but not determinative. While both involve production of goods in the forum state, in this case defendant visited the plant not to return goods, but to inspect the plant and conduct, at least, minimal negotiations. As the court in <u>Borg-Warner</u> noted, this fact is jurisdictionally significant.

The court in <u>Borg-Warner</u> relied heavily on <u>Owen of Georgia, Inc. v. Blitman</u>, 462 F.2d 603 (5th Cir. 1972).³ According to <u>Borg-Warner</u>, "<u>Blitman</u> stands for the proposition that a mere one-time purchaser of goods from a seller in the forum state cannot be constitutionally subject to the exercise of personal jurisdiction by the courts of the forum state." 786 F.2d at 1059. This court does not see such a far reaching holding from the facts in <u>Blitman</u>. In <u>Blitman</u>, defendants were building a housing project in Boston, Massachusetts. In need of steel for the project, defendants orally contracted with a Massachusetts corporation, Design Structures, Inc., for the production of the needed steel. Design Structures then arranged for the steel production through

---

³ In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit, including Unit A, handed down on or before September 30, 1981.

12

the plaintiff company in Georgia. A representative of the plaintiff then traveled to Massachusetts to met with the representatives of the defendants, and allegedly entered into a contract for steel to be manufactured in the plaintiff's Georgia facility. Both parties denied that Design Structures was their agent, and the plaintiff submitted an affidavit to this fact. The court held that, based on this evidentiary submission, such a showing was insufficient to assert jurisdiction. The case seemed to rest essentially on a lack of evidence presented to the court, and the uncertainty of the court regarding Design Structures's role as agent or representative.

In Banton Industries, 801 F.2d 1283, the Eleventh Circuit affirmed the district court's finding of lack of jurisdiction. Banton, an Alabama corporation, placed an unsolicited order in early 1985 for the purchase of goods from Dimatic, a company located in Nebraska. The parties had conducted similar past transactions since 1981. The goods were produced in Nebraska and shipped F.O.B. Omaha. The court held that Alabama did not have jurisdiction over Dimatic as it was not an Alabama corporation, it did not seek orders from Alabama, no representative of it ever entered Alabama, and its goods were retrieved from the plaintiff in Nebraska. In contrast, in this case a representative defendant visited plaintiff's facilities in Alabama, and the merchandise was produced in Alabama. It is disputed as to which party initiated contact.

In Hydrokinetics, inc. v. Alaska Mechanical, Inc., 700 F.2d 1026 (5th Cir. 1983), the Fifth Circuit Court of Appeals held that the Alaska based defendant did not purposefully avail itself of the privilege of doing business in Texas sufficient to warrant jurisdiction. Referred to each other by a mutual contact, the parties, by telex, telephone and letter conducted contract negotiations. During negotiations, two officers of the defendant inspected the plaintiff's equipment and operations in Texas. The parties later agreed that the plaintiff in Texas would

13

manufacture and deliver to Alaska certain goods. Alaska Mechanical did not regularly engage in business in Texas or in any state other than Alaska. The agreement provided that Alaskan law would govern. While similar to the present case, it is noteworthy that Alaska Mechanical did not regularly engage in interstate dealings. On this point, the court relied on <u>Mississippi Interstate Express, Inc. v. Transpo, Inc.</u>, 681 F.2d 1003 (5th Cir. 1982), discussed below. The court also made special note of the fact that the contract provided that Alaskan law would apply, a factor absent in this case.

In <u>Transpo, Inc.</u>, the Fifth Circuit reversed and remanded a district court holding that the defendants had insufficient contacts with the forum state to subject them to its jurisdiction. Mississippi Interstate, a trucking firm, contacted Traspo, a freight broker located in California, to arrange for the latter's supplying of trucks for the former's use. Transpo stressed to the court that initial contract discussions were in California, that the defendants were all residents of California, that there was no act by the defendants in Mississippi, that all shipments originated and ended in states other than Mississippi, that the defendants had no office or property in Mississippi, that no agent of the defendants had ever been to Mississippi, and that they had not solicited the business from Mississippi. The court, however, concluded that by simply contracting with a Mississippi entity, Transpo purposefully availed itself of the privilege of conducting activities in Mississippi and made it reasonably foreseeable that it might be haled into court there. The court also took special notice of the nature of Transpo's business:

> In view of the nature of the business of brokering interstate trucking services, it is hardly surprising that the defendant's contacts with any single jurisdiction are comparatively fleeting and slight. We conclude that it is both reasonable and just to require lesser forum contacts of a non-resident defendant in the context of the present facts than have been found necessary to sustain jurisdiction over

> defendants whose activities have, both generally and with respect to the transaction giving rise to the controversy, a more purely local character. To hold otherwise would tend to immunize from suit by anyone with whom they do business, in any but their home jurisdiction, those engaged in nationwide commercial activity who conduct extensive commercial activity in other jurisdictions primarily by telephone or through the mails.

681 F.2d at 1010. Similar to Transpo, Avne does considerable business with other states through the use of the mails and by telephone, as noted above.

In <u>Cauff Lippman & Co. v. Apogee Finance Group, Inc.</u>, 745 F. Supp. 678 (S.D. Fla. 1990), the district found that it did not have jurisdiction over the New York based defendant where there was one meeting in Florida prior to the drafting of any agreement, there were numerous telephone calls, faxes and e-mails between the parties, and payment was to be made in Florida. The court placed special emphasis on the fact that the single meeting was preliminary, and that the contract provided that New York law was to govern. The court in that case did conduct an evidentiary hearing.

The court now turns to three Alabama Supreme Court decisions which, though not binding, may help shed some light on the current inquiry. In <u>Phase III Construction</u>, the court held that the defendant company had sufficient contacts with the state to subject it to personal jurisdiction. Phase III was a Virginia corporation with its principal office in Virginia, which was not qualified to do business as a foreign corporation in the State of Alabama, did not transact business in the State of Alabama, and did not own property in the State of Alabama. A business contact referred Phase III to the Alabama corporation, Collins Signs, Inc. Phase III thereafter contracted with Collins by telephone to purchase and have installed a sign for a restaurant in Virginia. There were at least 10 other contacts between the parties by telephone or mail. The

15

court found that Alabama jurisdiction over Phase III was proper as it initiated contact with the Alabama company for its own profit, availing itself of the privileges of conducting business here; it ordered the manufacture and installation of a sign to be fabricated in Alabama; and its activities were sufficiently systematic and continuous. The case before the court is very similar to Phase III. In this case, in addition to the facts present in Phase III, a representative of the defendant visited Alabama and there were at least 19 faxes and letters, not counting phone conversations and e-mails, between the parties. However, the parties dispute who initiated contact.

In Milltex Industries Corp. v. Jacquard Lace Co., Ltd., 557 So.2d 1222 (Ala. 1990), the Alabama Supreme Court found that it had jurisdiction over a New York defendant where Jacquard, an Alabama corporation, solicited orders from Milltex over the phone. Representatives of both companies met in New York and in Alabama, whereby the parties entered into an oral agreement that Jacquard would produce certain goods in Alabama, F.O.B. Huntsville, Alabama. The court noted that, although Milltex did not initiate contact with Jacquard, it did contract with Jacquard voluntarily. Furthermore, some of the negotiations did take place in Alabama. The contract itself was performed in Alabama. Therefore, the court held that Milltex purposely availed itself of the privilege of conducting business in Alabama, and could therefore be haled into court here. This case is factually similar to the case at hand.

Finally, in The Brick Warehouse, Ltd. v. Sunshine Homes, Inc., 481 So.2d 860 (Ala. 1985), the Alabama Supreme Court held that it had jurisdiction over a Canadian business. In that case, the defendant placed many orders with the plaintiff for furniture manufactured in Alabama. The Canadian defendant initiated all orders. However, the Canadian never visited Alabama, and no written agreements were ever executed. The court held that the defendant could be haled into

16

Alabama courts as it initiated all of the contacts with the Alabama entity, thereby purposefully availing itself of Alabama's laws. The court was not dissuaded by the fact that the plaintiff might have difficulty enforcing any judgment it may gain against the defendant, or by the defendant's inconvenience in litigating in Alabama.

In the present case, there is a factual dispute as to which party initiated contact with the other. The court believes this to be a very important issue in regards to jurisdiction.

## CONCLUSION

Based on the foregoing, the court will postpone ruling on defendant's motion to dismiss until an evidentiary hearing is held on the issue of whether Printmasters or Avne initiated contact with the other and any other factual issues which may be suggested by the parties. An evidentiary hearing will be scheduled under separate order.

This _6_ day of June, 2000.

ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**