FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

00 AUG -8

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| PRINTMASTERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 00-PT-002-M |
| | ) | |
| AVNE SYSTEMS, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED
AUG 8 2000

## MEMORANDUM OPINION

This is a supplement to a Memorandum Opinion filed by the court on June 6, 2000. On August 3, 2000, the court conducted an evidentiary hearing. The court will consider the testimony at said hearing and the depositions offered at said hearing.

### FACTS[1]

In general, the facts are as follows.

The defendant, Avne Systems, Ltd. ("Avne"), is in the business of distributing various types of "consumer sampling" advertisements within newspapers, etc. At least a portion of this process includes placing the ads in plastic bags. The plaintiff, Printmasters, Inc. ("Printmasters"), manufactures plastic bags and prints messages on said bags.

As of 1998, Avne had a supplier of said bags other than Printmasters. A mutual business acquaintance of persons at Avne and Printmasters suggested that Avne might be a customer for

---

[1] For more detail, see the earlier Memorandum Opinion.

Printmasters. Apparently, there had been no previous relationship or contact between the two.

The court cannot find from the evidence whether Printmasters contacted Avne or vice versa. In any event, contact was made between the two and, without a visit by either party to the other party's home base, the parties began negotiations for the sale and purchase of plastic ("Vartech") bags. The discussions by phone, e-mail and fax, addressed quantities, prices, etc.

On or about December 15, 1998 (not November 2, 1998, as earlier stated by the court), a representative of Avne and a representative of another supplier of Avne visited Printmasters's plant site in Alabama. No final agreement had been reached prior to said visit.

The purpose of Avne's visit to Alabama was to confirm that Printmasters had the capability of producing the plastic bags needed by Avne in the numbers and within a time frame specified by Avne. The Avne representative viewed the plant and its equipment and had discussions with Printmasters's salesman and owners. Apparently, Avne became satisfied as a result of the visit and placed orders for the bags. The only issue presently before the court is whether this court has personal jurisdiction of Avne.

The only evidence tending to create any possible inference of general jurisdiction of Avne is: (1) Avne operates on a national scale. Chad Miller testified that Avne had clients "all over the country from coast to coast," dealing with newspapers, etc. in a number of states; (2) Avne had placed phone calls to a number of newspapers in Alabama; (3) the ordered bags were to be used in newspapers in at least six different states, not including Alabama; and, (4) Avne does national "promotions" and distributions of products through the mails.

The court cannot find that the strict requirements for finding general jurisdiction have been met. See Consolidated Development Corp. v. Sherritt, Inc., ___ F.3d ___, 2000 WL

889749 (11th Cir. 2000).

With regard to specific jurisdiction, the court has stated the underlying facts. While the parties disagree as to whether any "negotiations" as to quantity, price, etc. took place in Alabama, it is clear that discussions pertaining to Printmasters's "ability" to perform took place in Alabama and that no final deal was made until those discussions took place.

Avne's representative states, "But I think basically I just wanted their assurance that the bags would be done on time and that they would be quality and so forth." If he had not been satisfied the order would not have been placed. The Alabama visit was, at least, a factor in Avne's decision to order the products.

Avne's president testified that it was important for Avne to know that Printmasters "had the equipment to do the job." Further, that Chad was sent down "to qualify them as a vendor...." Further, "All we can do is see that they have the appropriate equipment and that their, you know, management is behind the program...."

Avne acknowledges that it sent a purchase order less than one month after the visit. Avne furnished the plates to be used for printing.

## DISCUSSION

The court has stated the general law applicable to personal jurisdiction determinations in its earlier memorandum opinion and will not fully repeat them here. The parties have emphasized the cases of <u>Sea Lift, Inc. v. Refinadora, Costarricense de Petroleo, S.A.</u>, 792 F.2d 989 (11th Cir. 1986); <u>Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.</u>, 786 F.2d 1055 (11th Cir. 1986); <u>Hydro-Kinetics, Inc. v. Alaska Mechanical, Inc.</u>, 700 F.2d 1026 (5th Cir. 1983); and <u>Mississippi Interstate Express, Inc. v. Transpo, Inc.</u>, 681 F.2d 1003 (5th Cir. 1982). The

court has discussed each of these cases, in its earlier memorandum opinion and has noted distinctions.

## CONCLUSION

While this court does not find personal jurisdiction of the general nature, it does conclude that it has personal jurisdiction of the specific nature. Of course, all cases have to be determined on their own facts and the totality of circumstances has to be considered. The court has considered these factors:

(1) It is not clear who instigated contact. See Sea Lift, 792 F.2d at 991, n.1.

(2) Avne did undertake to do business with an Alabama company. There is no evidence that Printmasters called on Avne outside of Alabama or that Printmasters advertised for business in New York.

(3) The product was not a stock product but was manufactured for a particular purpose.

(4) Avne supplied the printing plates to be used by Printmasters in Alabama.

(5) The manufacturing (performance) took place in Alabama. The law of Alabama would likely govern because that was the place of performance. This would likely be particularly true if Avne paid cost of shipment. The court is not aware of any evidence on this issue.

(6) Avne's representative came to the Alabama plant site to view it and have further discussions before making a final decision. Regardless of whether price and quantity were discussed, there were discussions about ability to perform, quality, etc. The representative was not satisfied to receive such assurances solely from the salesman. He asked to see the owners and received such assurances from them. The seeking of representations in Alabama was an invocation by Avne of the benefits and protection of Alabama.

4

(7) The further discussions in Alabama were not only "significant," they were decisive. The term "negotiation" is not as restrictive as suggested by Avne. It includes all communications for the purpose of reaching an understanding. See Black's Law Dictionary. The general dictionary meaning of "negotiation" is inclusive of relevant discussions leading to an agreement.

Considering all the above-stated factors and other discussion in this memorandum opinion and the earlier memorandum opinion and a comparison to Sea Lift, the court concludes that:

(1) There was more than a mere "foot-fall" of Avne on Alabama soil.

(2) There was not a mere "boilerplate" contract.

(3) There was no agreement as to what state law was to be applied.

(4) The case clearly arises out of and relates to Avne's contacts with Alabama.

(5) Avne conducted significant activities within Alabama.

(6) There was significant, in forum performance by Printmasters. Alabama law likely governs.

The court ultimately concludes that it has specific personal jurisdiction of Avne in this action. Its motion will be denied.

This the ___7___ day of August, 2000.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE